UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-80498-CIV-MARRA/JOHNSON

AMERITOX, LTD., and
U.D. TESTING, INC.,

       Plaintiffs,

vs.

AEGIS SERVICES CORP.,

       Defendant.

_____/

## OPINION AND ORDER

This cause is before the Court upon Plaintiffs' Motion to Dismiss Defendant's Sherman

Anti-Trust Act Sham Litigation and Patent Misuse Claims (DE 37) and Plaintiffs' Motion for

Leave to File Second Amended Complaint (DE 52).  The Court has carefully considered the

motions and is otherwise fully advised in the premises.

    A.  Motion for Leave to File Second Amended Complaint

On June 11, 2007, Plaintiffs brought a two-count Complaint for patent infringement

against Defendant.  On December 21, 2007, within the time frame allowed for amendment of

pleadings by this Court's September 28, 2007 Scheduling Order (DE 20), Plaintiff moved to

amend that Complaint to add claims for a violation of the Florida Deceptive and Unfair Trade

Practices Act, Tortious Interference with Business Relationship, Fraudulent Misrepresentation

and False Marking. (DE 24.)   Over the objection of Defendant, the Court permitted Plaintiffs to

amend the complaint.  (DE 28.)  On May 8, 2008, Plaintiffs sought leave to amend their

complaint again in order to dismiss their claims of patent infringement without prejudice and to

add a claim for false advertising under the Lanham Act.  In making their application, Plaintiffs acknowledge that the December 21, 2007 deadline for amendment has passed and assert that good cause exists under Rule 16(b) of the Federal Rules of Civil Procedure to allow amendment at this late date.  According to Plaintiffs, they did not learn of Defendant's non-infringement until a settlement meeting on March 20, 2008. (DE 52 at 7.)  Nor did Plaintiffs know that Defendant's product did not contain certain advertised features that are now the basis for Plaintiffs' proposed Lanham Act claim.  (DE 52 at 6.)

Defendant vigorously opposes this amendment, noting that the Lanham Act claim should have been brought in either the original complaint or the first amended complaint.  In addition, Defendant states that the "gravamen of this action has always been patent infringement" and that the patent infringement claims were always "baseless." (DE 53 at 1-2.)  Defendant also contends that Plaintiffs failed to adequately investigate their claims prior to filing this lawsuit. (DE 53 at 14-15.)

In ruling on Plaintiffs' application, the Court begins by examining Rule 15(a) of the Federal Rules of Civil Procedure. That rule provides that a party may amend the party's pleading "by leave of court or by written consent of the adverse party" and that "leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In construing Rule 15(a), the Supreme Court has held that there must be a substantial reason to deny amendment.  Foman v. Davis, 371 U.S. 178, 182 (1962).

More than twenty years after the Supreme Court's decision in Foman, the 1983 Amendments to the Federal Rules of Civil Procedure altered Rule 16 to contain a provision restricting the timing of amendments.  Fed. R. Civ. P. 16(b).  Under Rule 16, district courts are

2

required to "enter a scheduling order that limits the time to . . . join other parties and to amend the pleadings . . . ."  Id.  The scheduling order "control[s] the subsequent course of the action" unless modified by the court.  Fed. R. Civ. P. 16(e).  As noted by one court, the scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  Gestetner Corp. v. Case Equipment Co., 108 F.R.D. 138, 141 (D. Me. 1985).

A scheduling order may be modified only upon a showing of good cause.  See Watkins v. Farmers & Merchant Bank, 237 Fed App'x 591, 593 (11th Cir. 2007); Sosa v. Airprint Systems, Inc., 133 F.3d 1417, 1418 (11th Cir. 1998).  This good cause standard precludes modification unless the schedule cannot "be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16 advisory committee's notes, cited in Sosa, 133 F.3d at 1418.  In other words, good cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed. See Forstmann v. Culp, 114 F.R.D. 83, 85-86 (M.D.N.C. 1987).  Moreover, even if the opposing party would not be prejudiced by the modification of a scheduling order, good cause is not shown if the amendment could have been timely made.  See Hayes v. Rule, No. 1:03CV1196, 2005 WL 2136946, at *4 (M.D.N.C. August 19, 2005).

It has been held that a Court's evaluation of good cause is more stringent than its inquiry into the propriety of amendment under the more liberal Rule 15.  See Sosa, 133 F.3d at 1418; see also Forstmann, 114 F.R.D. at 85.  Thus, even if Plaintiffs could demonstrate that the amendment is proper under Rule 15, the Court must first determine whether Plaintiffs have shown good cause under Rule 16(b) because Plaintiffs' Motion was filed after the scheduling order's deadline. See Sosa,133 F.3d at 1419.  In other words, the likelihood of obtaining permission to amend

diminishes drastically after the deadline for amendments contained in the scheduling order expires.

After careful review, the Court finds that Plaintiffs have not made a showing of good cause to amend the complaint at this late date, i.e., nearly five months after the deadline set forth in the scheduling order.  The evidence to which Plaintiffs point in support of their amendment should have been known to Plaintiffs prior to the deadline for amendment of pleadings, or at the very least earlier than May 8, 2008, the date they filed the instant motion.  Although Plaintiffs claim that Defendant was not forthcoming with discovery, Plaintiffs did not act in a timely fashion to obtain discovery.  In fact, a review of Magistrate Judge Johnson's order denying Plaintiffs' motion to compel discovery reveals that Plaintiffs did not timely move to compel adequate responses to discovery requests.[1] (DE 49).

Moreover, the Court rejects Plaintiffs' attempt to blame Defendant for their own failure to recognize that Defendant's product was different from Plaintiffs.  For example, Plaintiffs argue that Defendant did not admit that it performed traditional drug testing, as opposed to the patented drug testing performed by Plaintiffs, and that based on Defendant's advertisement for its product, Plaintiffs were led to believe that Defendant's product infringed Plaintiffs' patent. (DE 52 at 5-6.)  In other words, Plaintiffs seek to convert their non-viable patent claim into a Lanham act claim by contending that they were misled by Defendant's advertisement to believe that Plaintiffs' patent was infringed.  The Court, however, finds these statements to be indicative of Plaintiffs' failure to gain a full understanding of Defendant's product by the deadline to amend

---

[1] Initially, Plaintiffs complained to the Magistrate Judge that Defendant did not timely file answers to interrogatories and responses to the request to produce.   Plaintiffs, however, later admitted that Defendant did submit those responses. (DE 49.)

4

the pleadings.  This hardly meets the standard for good cause.   Lastly, the Court notes that it has been generous to Plaintiffs with respect to amendment.  The Court permitted the prior amendment, an amendment which greatly expanded this case beyond the original patent infringement action.  Thus, for these reasons, the Court denies Plaintiffs' Motion for Leave to File Second Amended Complaint.

      B.  Motion to Dismiss Defendant's Sherman Anti-Trust Act Sham Litigation and Patent Misuse Claims

In response to Plaintiffs' First Amended Complaint, Defendant filed its Answer to First Amended Complaint and Counterclaim (DE 30).  Defendant's counterclaims are: non-infringement of the '788 patent (count one); invalidity of the '788 patent (count two); non-infringement of the '136 patent (count three); invalidity of the '136 patent (count four); commercial disparagement under the Lanham Act (count five); unfair competition (count six); violation of Florida Deceptive and Unfair Trade Practices Act (count seven); a Sham Litigation claim pursuant to the Sherman Anti-Trust Act (count eight) and patent misuse (count nine).

The allegations relating to all of these counterclaims include assertions that Plaintiffs and Defendant are "direct competitors in the drug testing industry." (Counterclaim ¶ 6.)  Defendant uses a "substantially dissimilar scientifically validated and recognized method" in contrast to Plaintiffs' "junk science" method. (Counterclaim ¶ ¶ 7-8.)  Plaintiffs have sought to "gain an unfair, improper and unlawful advantage in its competition with [Defendant] in the marketplace" by "engag[ing] in a concerted effort to disparage, and harm the reputation of [Defendant]." (Counterclaim ¶ 9.)  To that end, Plaintiffs have "willfully made false and/or misleading representations of fact regarding the nature and qualities of the services and commercial activities

of [Defendant], including false accusations of unethical and unlawful conduct, false and

misleading statements regarding the drug testing services provided by [Defendant], and the false

accusation that [Defendant] uses the same [ ] science employed by [Plaintiffs] in providing its

drug monitoring services." (Counterclaim ¶ 10.)  For example, Plaintiffs have told prospective

clients of Defendant that Defendant "copied us," "stole our business model," "is doing what

[Plaintiffs do] but not as well," and that Defendant does not give "enough information in [its]

report," or "do what the physician needs." (Counterclaim ¶ 11.)

  Plaintiffs seek dismissal of the Sherman Anti-Trust Act Sham Litigation and patent

misuse claims.  The Sherman Anti-Trust Act Sham Litigation claim states that Plaintiffs "have

initiated and maintained this objectively baseless 'sham litigation' against its competitor,

[Defendant], without regard to the merits of this litigation, in order to exploit the judicial

processes (as opposed to the outcome of the processes) as an anticompetitive weapon."

(Counterclaim ¶ 37.)  With respect to the patent misuse claim, Defendant alleges that it is

"entitled to a declaration that the patents in suit are void and unenforceable because of

[Plaintiffs'] patent misuse in commencing litigation against [Defendant] without undertaking the

necessary objective pre-filing investigation to determine whether the accused products or services

infringed the claims of the patents in suit and then continuing this litigation knowing that

[Defendant] did infringe the claims of the patent in suit."  (Counterclaim ¶ 42.)

  In moving for dismissal, Plaintiffs argue that the alleged facts are simply formulaic

recitations of the elements of the causes of action.  With respect to the sham litigation claim,

Plaintiffs assert that the alleged facts do not show that Plaintiffs' lawsuit is "objectively baseless"

or was brought with the "subjective motivation to interfere directly with the business relationship

of a competitor." (DE 37 at 5.)  In response, Defendant provides additional factual context in support of its contention that Plaintiffs' patent infringement claims were objectively baseless. (DE 45 at 4-8.)  With respect to the patent misuse claim, Plaintiffs contend that, even assuming the facts pled are true, none of those facts sufficiently plead that claim. (DE 37 at 1-2.)

    1. Legal Standard

    Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed.R.Civ.P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

    2. Sherman Anti-Trust Act Sham Litigation

    The Sherman Anti-Trust Act proscribes acts that restrain trade.  See 15 U.S.C. § § 1-2; Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC, 421 F.3d 1227, 1233 (11th Cir. 2005). Notwithstanding the reach of that Act, the Noerr-Pennington doctrine creates immunity from Sherman Act liability when a party brings litigation that results in an anticompetitive outcome. Andrx, 421 F.3d at 1233.  However, an exception to Noerr-Pennington exists where a party

engages in "sham litigation." Id.   A party asserting that Noerr-Pennington immunity should not apply must establish the following: "(1) the lawsuit is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits; and (2) the party bringing the allegedly baseless suit did so with a subjective motivation to interfere directly with the business relationships of a competitor."  Id. at 1234 quoting Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc., 508 U.S. 49, 60-61 (1993) (internal quotation marks and emphasis omitted).  In demonstrating that a party brought a lawsuit as part of an anticompetitive plan external to the underlying litigation, it is necessary to make a showing of bad faith.  See Professional Real Estate Investors, 508 U.S. at 60;  Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1080 n.4 (8th Cir. 1999); C. R. Bard, Inc. v. M3 Systems, Inc., 157 F.3d 1340, 1368-69 (Fed. Cir. 1998); McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1561 n.12 (11th Cir. 1992). Bad faith can include reckless conduct as well as deliberately and knowingly engaging in wrongdoing, fraud or misconduct.  Amlong & Amlong P.A. v. Denny's, Inc., 500 F.3d 1230, 1239-41 & n.1 (11th Cir. 2007) (discussing bad faith in the context of sanctions against an attorney); Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (same) see also Black's Law Dictionary (8th ed. 2004) (defining bad faith as "dishonesty of belief or purpose").

With respect to the first prong of this test, Plaintiffs correctly note that the counterclaim fails to provide any factual basis to support this element of the cause of action.  The facts supporting the counterclaim (Counterclaim ¶ 9) and the counterclaim (Counterclaim ¶ 37) itself merely recites the legal standard.  However, Defendant's response to the motion provides numerous facts which explain notable differences between Plaintiffs and Defendant's product. For example, Defendant states that it engages in "traditional urine testing" in contrast to

8

"therapeutic drug monitoring," and that it "does not use the 'typical morning void' as its standard

for comparison of specific gravity" but a "different standard reflecting an 'ideal' population."

(DE 45 at 4-8.)  Some of these facts are supported by declarations, but are not in the pleading.

Therefore, the Court cannot consider those facts.  See Grossman v. Nationsbank, N.A., 225 F.3d

1228, 1231 (11th Cir. 2000) (on a motion to dismiss, the Court cannot consider evidence outside

of the pleadings). However, Defendant can amend this counterclaim to include facts that would

demonstrate that Plaintiffs' patent infringement action was objectively baseless.

    With respect to the second prong, Plaintiffs argue that Defendant's "facts fail to state

anything that, if taken as true, could support the contention that Plaintiffs are using this lawsuit to

interfere directly with [Defendant's] business relationships."  (DE 37 at 8.)   Defendant does,

however, identify various false statements allegedly made to prospective clients that were made

"willfully." (Counterclaim ¶¶ 10-11.)  Thus, Plaintiffs' charge that Defendant's counterclaim is

devoid of any facts evidencing bad faith (DE 51 at 7) can be rejected.[2]  Likewise, Plaintiffs'

claim that Defendant failed to plead facts that Plaintiffs' lawsuit was brought as part of

anticompetitive plan external to the underlying litigation is rejected.  (DE 51 at 6-7.)  First,

Defendant did plead that Plaintiffs sought to "gain an unfair, improper and unlawful advantage in

---

    [2] The Court is puzzled by Plaintiffs' reference to the Lanham Act and the heightened
pleading standards they claim applicable to that act.  (DE 51 at 7-8.)  Plaintiffs did not move to
dismiss Defendant's Lanham Act counterclaim.  In any event, to the extent Plaintiffs are seeking
the application of a heightened pleading standard to allegations of sham litigation, the Court
rejects that application.  See Andrx, 421 F.3d at 1234-35 (applying Rule 8(a) notice pleading
standard to antitrust violations); St. Joseph Hosp., Inc. v. Hospital Corp. of America, 795 F.2d
948, 953-54 (11th Cir. 1986) (applying Rule 8 to sham litigation actions); SecurityPoint Media,
LLC v. Adason Group LLC, No. 8:07-cv-444-T-24TGW, 2007 WL 2298024, * 5 (M.D. Fla.
Aug. 7, 2007) (declining to impose a heightened pleading standard to allegations of sham
litigation).

its competition with [Defendant] in the marketplace" by "engag[ing] in a concerted effort to

disparage, and harm the reputation of [Defendant]" and "willfully made false and/or misleading

representations of fact regarding the nature and qualities of the services and commercial activities

of [Defendant], including false accusations of unethical and unlawful conduct, false and

misleading statements regarding the drug testing services provided by [Defendant], and the false

accusation that [Defendant] uses the same junk science employed [Plaintiffs] in providing its

drug monitoring services." (Counterclaim ¶ ¶ 9-10.)   At the pleading stage, the Court finds these

allegations sufficient.  Second, Plaintiffs' reliance on McGuire Oil is unavailing.  (DE 51 at 7.)

That case addressed the evidentiary burden of a sham litigation claim in the summary judgment

context, finding there was no record evidence to suggest that the party bringing the underlying

lawsuit did not "honestly believe that their claims . . . were meritorious."  McGuire Oil, 958 F.2d

at 1561 n.12.  In other words, McGuire Oil does nothing to support Plaintiffs' objections at this

stage of the proceedings.   As such, the Court rejects Plaintiffs' argument that Defendant did not

adequately plead that Plaintiffs brought their suit with a subjective motivation to interfere

directly with the business relationships of a competitor.

      3.  Patent Misuse

Plaintiffs move to dismiss Defendant's counterclaim of patent misuse.  Although

Plaintiffs attack the manner in which this counterclaim was pled, the Court finds that these

arguments fail to raise the most compelling basis to dismiss this counterclaim; namely, patent

misuse is an affirmative defense to the accusation of patent infringement.  Virginia Panel Corp.

v. MAC Panel Co., 133 F.3d 860 (Fed. Cir. 1997).   In other words, the proper mechanism to

assert patent misuse is to plead it is an affirmative defense, which Defendant did.[3] (Affirmative Defenses ¶ 8.)  Therefore, the Court dismisses Defendant's counterclaim of patent misuse; however, Defendant is entitled to pursue the affirmative defense of patent misuse.

C.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Plaintiffs' Motion to Dismiss Defendant's Sherman Anti-Trust Act Sham Litigation and Patent Misuse Claims (DE 37) is **GRANTED** in part and **DENIED** in part.  Defendant is granted leave to amend the Sherman Anti-Trust Act counterclaim according to the directives set forth in this Order.  The patent misuse counterclaim is dismissed.  Plaintiffs' Motion for Leave to File Second Amended Complaint (DE 52) is **DENIED**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 9th day of July 2008.

_____
KENNETH A. MARRA
United States District Judge

---

[3] The Court notes that this defense derives from the equitable doctrine of unclean hands and "relates generally to the use of patent rights to obtain or coerce an unfair commercial advantage." C.R. Baird, Inc. v. M3 Systems, Inc., 157 F.3d at 1372.